HOOD, Judge.
This suit was instituted by Mrs. Beverly Holmes Townsend, as natural tutrix for her minor son, Rory I. Vanderlick, to recover damages for personal injuries sustained by her son when he was thrown from his bicycle while riding on a public street in the City of Alexandria. The defendants are State of Louisiana, through the Department of Highways, Louisiana Paving Company, Inc., and City of Alexandria. The trial court rendered judgment for defendants, rejecting plaintiff’s demands, and plaintiff has appealed.
The issues are whether any or all of defendants were negligent, and whether young Vanderlick also was negligent, barring plaintiff from recovery.
The accident occurred about 4:30 p. m. on July 31, 1972, on Jackson Street Extension, in Alexandria. The weather was clear and dry, and visibility was good. Jackson Street Extension is a four-lane, 47-foot wide, concrete street running east and west. There are curbs on each side of that thoroughfare, and some drainage catch basins are located at various points on that street adjacent to the curbs.
Immediately before the accident occurred, plaintiff’s son, who lacked only three days of being IS years of age, was riding his bicycle west along the north side of the above street. His friend, Julie Be-tar, was riding another bicycle immediately behind him. When Rory’s bicycle reached a point at or near a drainage catch basin on the north side of the street, he suddenly fell or was thrown forward over the handle bars of the bicycle, and as a result of that accident he sustained injuries which form the basis for this suit.
The drainage catch basin at the site of the accident consisted of a rectangular shaped opening in the street surface, about four feet long and 12 inches wide, which opening was covered with a cast iron grate. The basin was constructed in such a way that when the grate was in place the surface of it was level with the surface of the street. The purpose of the catch basin was designed so that it would not interfere off the street into the storm sewers, and it was designed so that it would not interfere with motor vehicle traffic on the street. The catch basin was located on the extreme north edge of the street, the length of it running along and adjacent to the curb, with the opening and grate extending about 12 inches from the curb into the street.
The grate which covered the catch basin opening was about four feet long, and it was exactly 10% inches wide. When in place, it covered the full length of the catch basin opening, but it was U/a inches narrower than that opening was supposed to be. There were a total of 20 slots or holes in the grate, the purpose of them being to permit water to drain from the street through those holes into the storm *889 sewer. Each of these slots or holes in the grate was rectangular in shape, and each was l]/$ inches wide and 11 or 12 inches long. The slots or openings ran lengthwise on the grate, parallel to each other, and they were slightly less than an inch apart.
There was nothing to hold the grate rigidly in place over the catch basin opening, and since it was a little narrower than the opening, it normally could be moved a maximum of U/s inches toward or away from the curb. If moved as far as possible toward the curb, it ordinarily would leave a space between the south edge of the grate and the south rim of the opening of as much as 1% inches.
The catch basin and grate involved here was a standard type of basin and grate which had been used by the Highway Department for many years. The City of Alexandria has used that specific grate design for 30 years, and there are four or five thousand drainage grates in the city. The evidence shows that the grate was designed to be ll/s inches narrower than the opening, so that it could be easily removed and replaced, and it would allow an additional slot, with a maximum width of U/& inches, for drainage purposes.
Actual measurements were taken of the particular catch basin which was located at the site of this accident, and those measurements showed that the opening in that basin was slightly irregular. It was 12 inches wide at the extreme east end of the basin, but it was 12i4 inches wide at the extreme west end. If the grate on that basin had been moved as far as possible toward the north curb, it is conceivable that the space left between the south edge of the grate and the south edge of the opening would be as much as 1% inches at one point. It is almost impossible to construct the concrete opening to exact specifications, hqwever, and the Highway Department has always regarded a variation of as much as one quarter of an inch in those openings as being acceptable.
At the time the accident occurred, Rory was riding on his Kabuki, 10-speed bicycle. His companion, Julie, was riding on the same kind of vehicle. The tires on these foreign made racing bicycles were very small and narrow. They were less than li/s inches wide, and they would easily drop into any of the slots or spaces in the catch basin grate which was involved here. If a wheel on Rory’s bicycle dropped into one of the slots in the grate, the wheel would sink only a few inches below the surface of the street, because each slot was less than 12 inches long and the diameter of the wheel was greater than that. If the wheel dropped into a space between the south edge of the grate and the south rim of the opening, however, then the wheel conceivably could sink down to its hub, because that slot or space ran the full length of the catch basin and thus its length was greater than the diameter of the wheel.
Rory and his companion were riding their bicycles at a relatively fast speed as they approached this catch basin. Rory stated that he was riding “a little above medium” speed, and that they “were not going slow.” Julie stated that they “were going fast,” and she estimated their speed at about fifteen or twenty miles per hour. Both Rory and Julie conceded that they could see the grate clearly before they reached it, that they had ridden their bicycles on that street many times, and that they were thoroughly familiar with their bicycles and with catch basins and grates of that kind.
Rory does not remember anything about the accident, and he was unable to state whether he ran his bicycle over the grate, or whether the catch basin or grate had anything to do with his mishap. Julie also was unable to state how the accident occurred. She stated “I just saw Rory flip over his bike, that’s all,” and that she doesn’t know “whether he ran over the drain grate, whether he ran over a hole, or what happened.” She also stated that Rory’s bicycle fell on the street near the *890 catch basin, that “the bike did fall down,” and that “I don’t remember if it fell . . . exactly on the grate or anything.”
Plaintiff contends that the grate had shifted as far as it would go toward the north curb, leaving a space of up to 1^ inches between the south edge of the grate and the south rim of the catch basin opening, and that the front wheel of he.r son’s bicycle fell into that space. She argues that the Highway Department was negligent in designing and permitting the construction of a grate which could shift and leave an opening which was dangerous to bicycles. She contends that the defendant Paving Company also was negligent in failing to construct the catch basin in accordance with the plans and specifications of the Highway Department, and in constructing it in such a manner that it created a danger to bicycle riders. She argues, finally, that the City of Alexandria was negligent in failing to maintain the street where this accident occurred in a safe condition, free from dangers which were not readily observable by a reasonable and pur-dent person using the street.
The trial judge held, correctly we think, that the evidence failed to establish whether the wheel of Rory’s bicycle “crossed the grate or fell into the space between the grate and the edge of the catch basin.” He concluded that “plaintiff has failed to carry its burden of proving that the Highway Department’s negligence caused his injuries.” The trial judge also held that “even if it could be assumed that the grate itself was negligently designed, the Court feels that the plaintiff was negligent in failing to see and avoid it and that this negligence would bar his recovery.”
We agree with the trial court that plaintiff has failed to establish a causal connection between the design or condition of the drainage grate and the accident, and she thus has failed to show actionable negligence on the part of any of the defendants. We have decided to base our decision, however, on the ground that young Van-derlick was negligent, that his negligence was a proximate cause of the accident, and that plaintiff thus, is barred from recovery by her son’s contributory negligence, regardless of any alleged fault on the part of defendants.
A bicyclist, like a motorist, is subject to the general laws of the state relative to the use of vehicles on public streets or highways. He is required to maintain a proper lookout, to see and avoid any dangers or obstructions which he should have seen by the exercise of reasonable care, and to operate his bicycle at a speed which is safe and proper under the circumstances. Vincent v. Superior Iron Works and Supply Company, 170 So.2d 184 (La.App. 4th Cir., 1965) ; Bulliard v. Fortier Lincoln-Mercury, Inc., 241 So.2d 31 (La.App. 3rd Cir., 1970); Carter v. Connecticut Fire Insurance Co., 189 So.2d 724 (La.App. 1st Cir., 1966).
We held in Guillory v. Fidelity & Casualty Company of New York, 251 So.2d 199 (La.App. 3rd Cir., 1971) that “a bicyclist is subject to the general laws of the State relative to the use of vehicles on the highway.”
In Vincent v. Superior Iron Works and Supply Company, supra, a freshman high school bicyclist encountered a pipe, two inches in diameter, which spanned the road on which he was riding. He ran into the pipe and was injured. The court rejected his father’s demand for damages on the ground that the boy was guilty of contributory negligence. The court said, “It (the pipe) was so located that anyone entering the road in a proper manner could have seen it . . it is clear that the son, of high school age, was guilty of contributory negligence.”
We have already noted that the evidence in the instant suit does not show that the drainage basin or the grate which covered it had anything to do with the accident. Assuming that Rory ran his bicycle over the grate, however, and that the *891 design or condition of the grate caused him to fall, we think the evidence establishes that he was negligent in causing his bicycle to roll over the grate, particularly while he was travelling at a relatively fast rate of speed.
Plaintiff’s son was about 15 years of age at that time. He obviously was bright and alert, since he had an unusually high scholastic average in his high school. At the trial he testified that he had never specifically avoided riding over the drainage grates in the street, and that he had never considered whether it would be dangerous to run his narrow tired bicycle over them. In a deposition, taken before the trial, however, he stated that he “would purposely avoid them (the grates) because of the holes in them.”
Rory stated that the wheels of an American made bicycle are wider than those of the bicycle he was riding, and that from a mere visual inspection of the grate he thought that even the wheels of an American bicycle would drop down into the slots or holes in the grate, just as the narrow wheels of his foreign made bicycle would drop into them. He thus was aware of the fact that the wheels of the bicycle he was riding would drop into the holes in the drainage grate if he permitted his bicycle to roll over it.
We find no merit to plaintiff’s argument that Rory had the right to assume that the grate was designed and constructed for the safe passage of narrow tired bicycles, and that he thus did not have to anticipate that his front wheel would get caught in that grate. We have pointed out that Rory was aware of the fact that the wheels of his bicycle would drop into the holes, and since the danger was apparent he was obliged to try to avoid it. He did not have the right to deliberately expose himself to the known danger, simply because he may have had the right to assume that such a danger did not exist.
Although the catch basis was located adjacent to the curb, photographs show that there was about a six inch recess in the curb at the point where that basin was installed. About one-half of the width of the drainage grate thus was north of the line which would have been the curb line were it not for that recessed area, and only the other half of the grate extended into the regular traveled portion of the street. This is of some significance, we think, since it shows that even if young Vander-lick had been riding along the extreme north edge of the street, very close to the curb, he would have had to veer only a very few inches to his left in order to avoid running over the small part of that grate which extended south of the curb line. The distance he would have had to veer in order to go around the grate was so slight that we do not think it would have put him in danger of being struck by vehicles which were traveling on the street.
Plaintiff argues that the wheel of her son’s bicycle must have dropped into the space between the grate and the rim of the catch basis opening, because he would not have fallen if the wheel had merely dropped into one of the slots on the grate. She concedes that the wheel would drop a few inches if it rolled into a slot, but she reasons that it would bounce out and would not get stuck, and that it would not cause him to fall. Her argument is that Rory thus was not negligent either in running over the grate or in assuming that there would not be another opening between the grate and the rim of the catch basin large enough to permit his wheel to get stuck in it. There is no merit to that argument. We think a bicyclist would subject himself to a definite risk of accident and injury if he caused his narrow tired bicycle to roll over the grate at a fast rate of speed, allowing one or both wheels to drop into the slots or openings in that grate. Rory was negligent in riding his bicycle over the grate, therefore, regardless of whether there was an opening between the grate and the rim of the basin.
Our conclusion is that young Vanderlick was negligent in deliberately riding his bi *892 cycle over the grate, that his negligence was a proximate cause of the accident, and that plaintiff thus is barred from recovery. Having reached that conclusion, it is unnecessary for us to determine whether any of the defendants were negligent.
For the reasons assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.
WATSON, J., dissents and assigns written reasons.