518 So.2d 1128 (1987)
Rodger KENNEDY,
v.
MITCHELL ENGINEERING, et al.
LOUISIANA COCA-COLA BOTTLING COMPANY,
v.
MITCHELL ENGINEERING, et al.
Paul A. DAROCA, et al.,
v.
BARBEE ENTERPRISES, LTD., et al.
Rodger KENNEDY,
v.
BARBEE ENTERPRISES, LTD., et al.
Nos. CA-7292 to CA-7295.
Court of Appeal of Louisiana, Fourth Circuit.
December 30, 1987.
Rehearings Denied February 11, 1988.
*1129 Dan C. Garner, Michael J. Navitsky, John G. Munoz, New Orleans, for appellant-Rodger Kennedy.
Boggs, Loehn & Rodrigue, Charles A. Boggs, Thomas W. Lewis, New Orleans, for Butler, Mitchell Engineering and Commercial Union Assur. Co.
Kenneth C. Hughes, New Orleans, for third party defendants appellees-The Whitney Shop.
Michael K. Springmann, Metairie, for Barbee Enterprises, Ltd. and The American Ins. Co.
Kiefer, Kiefer and Schneider, John G. Lankford, New Orleans, for appellant-Coca Cola Bottling Co. Ltd.
Before GULOTTA, C.J., and SCHOTT and BYRNES, JJ.
*1130 GULOTTA, Chief Judge.
These consolidated suits resulted from chain-reaction rear-end collisions involving five vehicles. Multiple appeals and answers on the issues of liability, quantum, and worker's compensation reimbursement have been filed from judgments rendered after a jury found one driver to be solely at fault.

BACKGROUND
The accident occurred on June 24, 1980, in the New Orleans-bound right hand lane of the Greater New Orleans Bridge in the vicinity of the Camp Street exit. An unidentified truck, that had stopped in the left lane, was causing a congestion of traffic in both New Orleans-bound lanes. When an eighteen wheel tractor trailer rig driven by Robert L. Butler (for his employer Mitchell Engineering) switched from the left to the right lanes, it was rear ended by another eighteen wheeler owned by Louisiana Coca Cola Bottling Company and driven by George Samuel Kippers, III. The Mitchell truck in turn struck the rear of a van driven by Rodger Kennedy who was on a mission for his employer, Barbee Enterprises, Ltd. Kennedy then rear ended a station wagon driven by Catherine Daroca, which had stopped ahead of him, and caused her vehicle to collide with the rear of The Whitney Shop's pick up truck driven by Wiliam Murphy, Jr.
Kennedy filed suit against Mitchell Engineering (Mitchell), Coca Cola Bottling Company (Coke), and The Whitney Shop, and their respective drivers and insurers. In a separate action, Daroca filed suit against Barbee Enterprises Ltd., Mitchell, Coke, and their respective drivers and insurers. Coke and Mitchell settled with Daroca by paying her $8,000.00 each, but these defendants and The Whitney Shop filed third party demands against each other for indemnification and/or contribution. American Insurance Company, Barbee's worker's compensation carrier, intervened seeking reimbursement for compensation and medical benefits paid to Kennedy, and for relief from paying any further benefits to him. The suits were consolidated.
After a trial on the merits, a jury found Robert L. Butler and his employer, Mitchell, solely at fault, and awarded $20,000.00 in general damages to Kennedy. On February 6, 1985, a judgment was rendered casting Butler, Mitchell, and its insurer, Commercial Union Assurance Companies solidarily liable to Kennedy in accordance with the jury's verdict. The judgment further decreed that Rodger Kennedy, Mitchell, and its liability insurer were liable to intervenor American Insurance Company in the amount of $17,500.00. The trial judge dismissed all other demands.
Pursuant to intervenor's post trial motion, the trial judge rendered a judgment on June 5, 1985, which increased intervenor's award to the full amount of benefits and medical expenses paid ($35,497.21 as of the date of trial). The court also awarded costs and legal interest on all amounts paid by the intervenor, and further decreed that the $20,000.00 awarded Kennedy would be credited against intervenor's obligation for any future benefits or medical expenses accruing subsequent to the satisfaction of the judgment.
On August 7, 1985, the trial judge amended the June 5, 1985 judgment by decreeing that Mitchell owed Coke the sums of $9,380.88 (damages to Coke vehicle) and $8,000.00 (amount paid by Coke in settlement to Catherine Daroca) with interest on each sum from date of judicial demand until paid.
Plaintiff Rodger Kennedy appeals quantum only, seeking an increase in the award. In an independent appeal and in an answer to plaintiff's appeal, Mitchell contends that the evidence does not support liability on its part. Coke has answered the appeals and seeks to preserve its entitlement to the awards of $8,000.00 and $9,380.88 plus interest and costs. Intervenor, American Insurance Company (Kennedy's employer's worker's compensation carrier), has also answered the appeals of Rodger Kennedy and Mitchell, seeking relief from the payment of any future worker's compensation benefits to Kennedy upon satisfaction of the judgment.

*1131 LIABILITY
Mitchell contends that the evidence is insufficient to find sole liability on its part. According to this defendant, Coke was solely at fault or at least concurrently negligent in striking Mitchell's truck and causing the chain reaction accident. We disagree.
George Samuel Kippers, III, the driver of the Coke truck, testified that he was crossing the bridge in the right lane, and, as he approached the Camp Street exit, vehicles started to change lanes. According to Kippers, the Mitchell truck, which had passed him at the top of the bridge, was about 15 to 20 feet in front of him when it tried to change from the left to the right lane. Recognizing a precarious situation, Kippers applied his brakes but was unable to avoid striking the rear of the Mitchell truck. According to Kippers, he was moving between 10-15 MPH at the time of the impact.
On the other hand, Robert L. Butler, the driver of the Mitchell truck, testified that he had put his blinker on, but could not get into the right lane because the traffic was bumper to bumper on top of the bridge. The witness stated that only after several cars had left at the Camp Street exit was there room for him to switch into the right lane. According to Butler, by the time he had switched lanes, he had to stop because a pick up truck farther ahead had lost its load in the left lane. Butler related that he had been stationary in the right lane about five seconds when he was rear ended by the Coke truck. He further testified that the Coke truck driver told him after the accident that his trailer brakes, which had given him trouble some weeks before, had not held. Butler additionally stated that Kennedy, who was the driver ahead of him, had changed lanes at about the same time that he had, and that Kennedy's actions did not hinder his (Butler's) ability to control his vehicle.
Plaintiff Kennedy testified that he was traveling in the company van in the right, New Orleans-bound lane. While on top of the bridge, plaintiff noticed that the Mitchell vehicle had signaled to enter the right lane but was unable to do so because of the heavy traffic. Because of an air conditioning duct "blowing" off the back of a pick up truck farther ahead, drivers began stopping and trying to switch lanes. As plaintiff was trying to stop, he saw the 60 foot long Mitchell truck coming in behind him. Kennedy started tapping his brake lights to let the Mitchell truck know what was happening, and moved in a little closer to the vehicle in front of him so that the Mitchell vehicle would have room "to get in". According to Kennedy, the Mitchell truck was behind him for only a brief second before he was hit. Kennedy also testified that the Coke driver told him that there were no brakes on the Coke trailer and that he had jack-knifed the truck a week before in order to avoid an accident.
In response, however, the Coke driver stated that although he had told the investigating officer of trouble with his truck when it first came out of the repair shop before the accident, the truck was completely repaired and had new brakes at the time of the collision. Kippers also testified that he thought Kennedy had switched lanes either before or at the time the debris had fallen off the truck in front of him.
Catherine Daroca testified that she was in the right hand lane when she noticed, about 6 to 8 car lengths ahead, a large package in the middle of the two lanes and a person by a stopped truck in the left lane "picking something up". Because traffic in front of her was slowing down and stopping, Daroca stopped about five feet from behind the pick up truck and Kennedy stopped his van behind her. Daroca stated that she had been stopped for about 5 or 6 seconds before she was hit from behind and then hit the truck in front of her.
Daroca further testified that although she had first noticed the Mitchell vehicle in the left lane about 30 to 40 seconds before the accident took place, she did not see it change from the left to the right lane. The witness further indicated that 20 to 30 seconds had elapsed between the time she last saw the Mitchell truck in the left lane and the time of the accident, and she related that she had not seen the Coke truck prior to the accident.
*1132 William C. Murphy, Jr., an employee of The Whitney Shop, testified that as soon as he passed through the toll gate on the westbank of the bridge, he observed the Mitchell truck immediately behind him in the left lane. Upon approaching the other side, the witness noticed ahead of him a stopped pick up truck, whose driver was retrieving a piece of air conditioning duct that had fallen in the left lane. In order to avoid an accident, Murphy moved into the right lane, where he was hit by Daroca before he could come to a complete stop. Murphy further testified that he had told the police officer that the Mitchell truck had been in the left lane all the way across the bridge, until changing to the right lane.
Jacinto J. Andry, a bridge police officer at the time of the accident, testified that the Coke driver had stated that he had problems with his brakes and that the Mitchell driver had stated that he was in the left lane because he had been unable to get into the right lane. This witness further testified that the Mitchell driver stated that he had figured the Coke truck had plenty of time to stop in order to avoid an accident. According to the officer, because an eighteen wheeler is required to use the far right lane, he issued a citation to the Mitchell driver for being in the left lane. He also issued a citation to the Coke driver for having an expired driver's license and no brake tag.
When an impact occurs immediately after a motorist changes lanes, the changing motorist bears the burden of proving compliance with LSA-R.S. 32:79(1). Trabeaux v. Sanchez, 279 So.2d 793 (La.App. 4th Cir.1973). Under the provisions of this statute the driver of a vehicle on a roadway divided into two or more clearly marked traffic lanes shall not change from one lane to another until that driver determines that the maneuver can be safely executed.
Considering the heavy traffic conditions, the testimony of Butler, Kennedy and Kippers indicating that there was a limited space for Mitchell to change lanes and the almost immediate impact after Mitchell's lane change, we conclude that the jury could have reasonably found that Mitchell failed to adhere to the provisions of LSA-R.S. 32:79(1) and that Mitchell was solely responsible for the accident.

QUANTUM
Kennedy contends that the $20,000.00 award is inadequate and should be raised to $550,942.98.
Dr. George Ellis, Sr., an ophthalmologist, who saw Kennedy a total of eighteen times, testified that he had first seen Kennedy on September 12, 1980 (approximately 2 ½ months after the accident) at Hotel Dieu Hospital. This expert indicated that Kennedy had complained of having double and blurred vision since the accident. According to Dr. Ellis, this condition resulted from brain damage suffered in the accident. Ellis further indicated that, although Kennedy's problem will not worsen, his condition will "probably" last for the rest of his life.
Dr. Richard Levy, a neurosurgeon, first saw Kennedy on December 4, 1981, a year and a half after the accident. According to Levy, when he pressed the region between plaintiff's shoulder blade and mid back, Kennedy complained of pain. This band of increased sensivity was about an inch and a half wide and ran from Kennedy's mid back around the chest wall to the front of his chest. Levy further testified that although he found no neurological basis for Kennedy's complaint of shoulder pain, a patient can experience pain even though there is no nerve damage. This witness also stated that Kennedy could have this problem for the rest of his life.
Dr. Ralph Gessner, a orthopedic surgeon, first saw Kennedy on August 19, 1980. Although he found no broken bones or physical deformities, he did feel that Kennedy had sustained a cervical strain (chronic soft tissue) and was in pain. The witness further stated Kennedy's pain was originally acute but was now chronic with periods of remission. Because Kennedy is predisposed to injury from a slight trauma, this physician felt he should restrict his activities and avoid climbing ladders, bending, stooping, or lifting more than 20 pounds. Gessner further related that Kennedy *1133 will probably need the use of a Tens Unit,[1] because it seems to be the only thing that lessens his pain for a prolonged period of time. Gessner, who has seen Kennedy on approximately 23 occasions, anticipates future medical visits approximately 4 times a year, and expenses for medication, a replacement battery for the Tens Unit every 3 or 4 months, and a new Tens Unit every two to three years.
Dr. Patton Culbertson, Jr., professor and dean of economics at LSU, testified that Kennedy, who was 35 years old at the time of the accident on June 24, 1980, has sustained $113,185.00 in lost wages from the date of the accident to the date of trial (January 16, 1985), and that future lost earnings equal $275,535.00. According to the witness, plaintiff's total estimated earnings loss equal $388,719.00. Culbertson stated that he had arrived at the $113,185.00 figure by using the wages per hour that Kennedy was earning at the time of the accident, and that the future lost wages were determined on the basis of Kennedy's working full time at the rate of $7.00 per hour for the next twenty-one and a half years.
Dr. Neil Gorman, an expert in the field of vocational rehabilitation, testified that Kennedy has the capacity to work part time and, if he adjusts the level of work from heavy to medium or light, could work a full work week. According to Gorman, Kennedy a former carpet installer, has the ability to make cost and job estimates in the carpeting business.
Dr. Terry Habig, an orthopedic surgeon who first saw Kennedy on April 27, 1981, testified that it was his impression that Kennedy had some disc degenerative arthritis that "could have been aggravated" by the accident. He indicated that Kennedy had not exhibited any chronic pain symptoms.
Dr. Carlos Gorbitz, a neurosurgeon who saw Kennedy once on July 15, 1980, testified that Kennedy did not exhibit any neurological symptoms or findings. He also stated (as did Dr. Habig) that Kennedy evidenced no pain during the examination and did not complain of blurred or double vision.
Dr. Raymond Glynn, a expert in physical medicine and rehabilitation, testified that his examination of Kennedy revealed no objective finding of acute cervical sprain. This witness further stated that although he found no significant abnormalities, there was some tenderness in the upper part of the neck. According to this witness, Kennedy could have returned to his former occupation on August 15, 1980 with no problems.
Dr. David Shraberg, a neurologist and psychologist who examined Kennedy on October 21, 1983, testified that he could find no organic cause for Kennedy's pain. Although Kennedy appeared to be in pain and depressed, it was this witness's conclusion that Kennedy's pain was psychogenic, which he defined as coming from the mind without any physical basis. Although this expert felt that some of the pain was due to the June, 1980 accident, he concluded the pain was primarily psychological, resulting from Kennedy's personality and lifestyle. Shraberg further opined that plaintiff's condition would show substantial improvement once the litigation is concluded.
Linda F. Rose, plaintiff's fiance, testified that she has known Kennedy since March, 1981. According to Rose, Kennedy has swelling in his right shoulder, and walks "hunched" most of the time. She has also seen him limp on occasions, have trouble walking, and often his left eye is much narrower than the right eye. According to Rose, Kennedy is unable to drive more than an hour at a time.
Rodger Kennedy testified that he has throbbing headaches, pain in his shoulder and neck, pain in his lower back when he bends the wrong way, double vision, and a drooping left eye. The witness uses a Tens Unit which sometimes gives relief when the pain is not very strong. He further stated he has problems wearing the unit because *1134 when he works and sweats the pads shock him or loosen altogether. Before seeing a chiropractor, the witness wore a Tens Unit almost every day, but now wears it three times a week. Furthermore, Kennedy stated that although he may skip a couple of days, he still takes pain pills and muscle relaxants, uses heating pads on his lower back and ice packs on his shoulder, and sleeps on a cervical pillow at night. Kennedy additionally stated that although the glasses prescribed for his eyes help, he cannot walk or drive with them because they distort the ground. Plaintiff testified that he suffers from physical coordination defects, has a problem driving a vehicle for any extended time and has a sleeping problem. According to Kennedy, his vision impairment has made it difficult for him to maintain employment.
Although there was conflicting testimony as to the nature of Kennedy's injuries and ability to work, we cannot say that the jury abused its broad discretion in accepting the medical evaluations of certain experts and rejecting or minimizing that of other expert witnesses. Accordingly, we conclude, based on that evaluation, that the award is neither excessive nor inadequate.

COKE'S ANSWER TO PLAINTIFF'S APPEAL
In its original answer (filed May 9, 1985) to plaintiff's appeal (filed March 15, 1985), Coke sought to have Kennedy's appeal dismissed and to have the February 6, 1985 judgment (which dismissed all claims other than the demands of Kennedy and intervenor American Insurance Company) modified or revised to reflect an $8,000.00 indemnification in favor of Coke, and against Mitchell, representing Coke's portion of the settlement amount paid to Catherine Daroca. Subsequently, the trial judge in an amended judgment on August 7, 1985, awarded Coke the requested $8,000.00. The judgment also included an award to Coke for property damages to the Coke vehicle in the amount of $9,380.88. After the August 7, 1985 amended judgment, Coke supplemented its answer to the appeal, requesting that the February 6, 1985 judgment be amended to reflect Coke's awards of $8,000.00 and $9,380.88 in the event the trial judge was without jurisdiction to render the August 7, 1985 amended judgment after granting Kennedy's appeal on March 15, 1985.
An appeal divests the trial court of jurisdiction "over all matters in the case reviewable under the appeal". LSA-C.C.P. Art. 2088. See also Rittiner v. Sinclair, 374 So.2d 680 (La.App. 4th Cir.1978), on rehearing granted. An answer to an appeal is equivalent to an appeal, the only material difference being that the answer must state that the relief demanded, whereas the appeal brings up for review all or any portion of the judgment that the appellant seeks to have reviewed. State Ex Rel. Guste v. Pickering, 365 So.2d 943 (La.App. 4th Cir.1978) writ denied 366 So. 2d 556 (La.1978).
Because the original answer to the appeal was filed prior to rendition of the amended August 7, 1985 judgment and the issues raised in that answer are reviewable on appeal, we conclude the trial judge was deprived of jurisdiction to render the amended judgment. Accordingly, we are compelled to vacate the August 7, 1985 judgment.
However, the amended answer to the appeal, filed subsequent to the amended judgment, now vacated, seeks specific modification of the original judgment (February 6, 1985) to allow the sums awarded in the amended judgment. The answer to the appeal therefore, presented to us for review the question of entitlement by Coke to the $8,000.00 reimbursement and to the $9,380.88 in property damages.
Having considered Coke's answer to the appeal and under the authority of LSA-C.C.P. Art. 2164, we hold that Coke is entitled to recover the $8,000.00 judgment paid to Catherine Daroca and $9,380.88 for the property damages incurred by the Coke truck.

AMERICAN INSURANCE COMPANY'S ANSWER TO APPEALS
In its answer to Kennedy and Mitchell's appeals, American Insurance Company, *1135 the intervening worker's compensation insurer, contends that the original and amended judgments omitted Robert L. Butler as a defendant from being cast in judgment on the intervention. Intervenor further contends that the judgment failed to decree that the intervenor should be paid by preference and priority out of any judgment rendered in favor of Kennedy and that intervenor should be released and relieved from payment of any future worker's compensation benefits to be paid to Kennedy.
The February 6, 1985 judgment decreed that Kennedy, Mitchell and Commercial Union Assurance Companies (Mitchell's insurer) were liable to intervenor American Insurance Company in the amount of $17,500.00. Subsequently, in the June 5, 1985 amended judgment, the amount of was increased to $35,497.21. The judgment further decreed "that the amount of the judgment herein in favor or Rodger Kennedy shall be credited against any obligation which the American Insurance Company may owe Rodger Kennedy for future workmen's compensation benefits, medical expenses, or otherwise accruing after the date of the satisfaction of this judgment."
LSA-R.S. 23:1103 in pertinent part provides as follows:
"In the event that the employer or employee or his dependent becomes party plaintiff in a suit against a third person, as provided in R.S. 23:1102, and damages are recovered, such damages shall be so apportioned in the judgment that the claim of the employer for the compensation actually paid shall take precedence over that of the injured employee or his dependent; and if the damages are not sufficient or are sufficient only to reimburse the employer for the compensation which he has actually paid, such damages shall be assessed solely in his favor, but if the damages are more than sufficient to so reimburse the employer, the excess shall be assessed in favor of the injured employee or his dependent, and upon payment thereof to the employee or his dependent, the liability of the employer for compensation shall cease for such part of the compensation due, computed at six per cent per annum, and shall be satisfied by such payment."
Under this statute and Landaiche v. Lou-Con, 461 So.2d 1107 (La.App. 5th Cir. 1984) an employer or the worker's compensation carrier is entitled to a credit for future compensation, up to the amount of the tort judgment, and is not liable for payment until that amount is exhausted. Once the amount of the judgment is depleted, the employer or carrier is obligated to pay any future benefits that come due.
In the instant case, intervenor has been compensated for all compensation benefits paid to plaintiff as of the date of trial. Furthermore, because the plaintiff has already received a $20,000.00 general damage award, intervenor is not obligated to make any worker's compensation payments until a credit in that amount is depleted. However, upon the depletion of the $20,000.00 credit, the employer or intervenor is obligated to pay any future benefits that become due plaintiff. Because intervenor was given a credit for the amount of Kennedy's judgment, we conclude that the judgment complied with the provisions of LSA-R.S. 23:1103. We note that the trial judge erroneously failed to cast Robert L. Butler in judgment to intervenor.

DECREE
Accordingly, the August 7, 1985 judgment is vacated and set aside. Further, we amend and recast the June 5, 1985 judgment as follows:
IT IS ORDERED, ADJUDGED, AND DECREED that there be a judgment, herein in favor of the plaintiff, Rodger Kennedy and against the defendants, Robert L. Butler, Mitchell Engineering, a subsidiary of Ceco Corporation and Commercial Union Assurance Companies, jointly, severly, and in solido in the full sum of twenty thousand ($20,000.00) dollars together with legal interest from date of judicial demand, until paid and for all costs;
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that there be judgment herein in favor of the Intervenor, *1136 The American Insurance Company, and against Robert L. Butler, Mitchell Engineering, a subsidiary of Ceco Corporation, and Commercial Union Assurance Companies in the full sum of the amount Intervenor has paid, or will pay prior to the date of the satisfaction of this judgment, to or on behalf of Rodger Kennedy in worker's compensation benefits and medical expenses (which sum, as of the date of trial, was $35,497.21), plus legal interest and all costs of the intervention. On all amounts paid by Intervenor prior to the date of judicial demand, legal interest shall be calculated from the date of judicial demand until paid. On all payments made by Intervenor subsequent to judicial demand, legal interest shall be calculated from the date of each payment by Intervenor until the date the judgment is paid.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the amount of the judgment herein in favor of Rodger Kennedy shall be credited against any obligation which the American Insurance Company owes Rodger Kennedy for future worker's compensation benefits, medical expenses, or otherwise accruing after the date of the satisfaction of this judgment.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that there be judgment herein in favor of Louisiana Coca Cola Bottling Company, and against Robert L. Butler, Mitchell Engineering Company a subsidiary of Ceco Corporation, and Commercial Union Assurance Companies, in solido, in the full sums of Nine Thousand Three Hundred Eighty and 88/100 ($9,380.88) Dollars and an additional Eight Thousand and no/100 ($8,000.00) Dollars, with interest on each sum from date of judicial demand until paid and all costs.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the trial court's judgment dismissing all other demands is affirmed.
JUDGMENT VACATED IN PART; AFFIRMED IN PART; AMENDED IN PART AND RECAST AS AMENDED.
BYRNES, J., concurs with reasons.
SCHOTT, J., dissents in part with reasons.
BYRNES, Judge, concurring.
The jury must have concluded that the coke truck could not have stopped in the time and space remaining after the vehicles in front of it had stopped. The jury also must have concluded that the Mitchell truck's action in changing lanes created the time/space problem which prevented the coke truck from stopping. Resolution of these factual questions is a very close call in this case. It would be both reasonable and plausible to find that the Mitchell truck, the coke truck, or both were at fault. The jury, finder of fact in this case, chose to conclude that the Mitchell truck was the sole cause of the accident. While other reasonable minds might reach a different conclusion, I cannot say that the jury was manifestly erroneous reaching the conclusion it did.
SCHOTT, Judge, dissenting in part:
I agree with every aspect of the judgment rendered by my colleagues except that part which affirms the trial court's exoneration of the Coke driver from liability. I am convinced that the accident could not have happened without some negligence on the part of the Coke driver. Butler was able to enter the lane ahead of the Coke truck before he came to a stop. At that point the Coke driver was in the position of a following driver who rear ended the vehicle ahead. This created a presumption of negligence which Coke did not rebut.
Because I believe the trial court committed manifest error in this regard I would reverse this aspect of the judgment and cast the Coke defendants in judgment solidarily with the Butler defendants.
NOTES
[1] A Tens Unit is a small electrical device which the patient wears around his belt. It has electrodes which radiate into the pain area. The unit emits minute electrical impulses and is designed to reduce spasm and pain in the muscle group experiencing trauma.