550 So.2d 388 (1989)
Christel JONES, Plaintiff-Appellant,
v.
GATEWAY REALTY, INC., Five Star Builders, Inc., Deborah Booksh Smith, Bayless Larry Morton, Elaine Allen Morton, Raymond Keith Ferrell, Jan Alison Smith Ferrell, State Farm Mutual Fire Insurance Company and Allstate Insurance Company, Defendants-Appellees,
Don J. O'Rourke & Associates, Ltd. and Continental Casualty Company, Defendants-Appellants.
No. 88-573.
Court of Appeal of Louisiana, Third Circuit.
October 4, 1989.
Rehearing Denied November 7, 1989.
Writs Denied January 5, 1990.
*390 David W. Robinson, Baton Rouge, for plaintiff-appellant.
Guglielmo, Lopez & Tuttle, James T. Guglielmo, Opelousas, for defendant-appellee O'Rourke.
Randall L. Guidry, Lafayette, for defendant-appellee Smith.
Roy, Forrest & Lopresto, L. Albert Forrest, New Iberia, for defendant-appellee State Farm.
Voorhies & Laabe, Greg Voorhies, Lafayette, for defendant-appellee City of Lafayette.
Before STOKER, DOUCET and YELVERTON, JJ.
STOKER, Judge.
The plaintiff, Christel Jones, attempted to ride her bicycle at night through a shortcut from one street to another by crossing through the rear of private property. In so doing, her bicycle struck a curbing in the parking lot of a commercial building. She was injured and sued the building owners, the builder of the property and the architect. The trial court found all parties at fault including plaintiff whose fault was fixed at 50%. There are only two parties to this appeal, the plaintiff and the architect. The two non-appealing defendants neither appealed nor answered the appeal and their liability as such is not at issue. As we decide the case, an issue arises as to their proportionate share of the fault.
The plaintiff-appellant raises the following issues: (1) plaintiff claims she was not at fault at all and she should have full recovery unreduced under comparative negligence principles, (2) alternatively, the trial court failed to follow the proper mode of allocating comparable fault because it should have weighed the fault of each defendant separately against the plaintiff, (3) the trial court erred in not granting her a solidary judgment against the defendants, and (4) the award of $114,100 was inadequate.
The defendant-appellant architect, Don J. O'Rourke & Associates, Ltd., contends it was not at fault, is not liable to plaintiff and should be dismissed from the case.
The defendants are Gateway Realty, Inc. (Gateway) and Jack Vincent Smith, Bernadine Hooper Smith, Jay Vincent Smith, Deborah Booksh Smith, Bayless Morton, Elaine Allen Morton, Raymond Keith Ferrell and Jan Alison Smith Ferrell (hereinafter referred to as the owners). Plaintiff alleged that the curb constituted an unreasonably dangerous condition and additionally joined in the suit the builder, Five Star Builders, Inc. (Five Star), the architect, Don J. O'Rourke & Associates, Ltd. (O'Rourke) and its insurer, Continental Casualty Company.[1] Plaintiff also filed suit against the City of Lafayette, which action was dismissed on a motion for a directed verdict made by the City.
After trial on the merits, the trial court found plaintiff to be 50% at fault, Gateway and the owners 17% at fault, O'Rourke 17% at fault and Five Star 16% at fault. Plaintiff's damages were fixed at $114,100, which amount was to be reduced by plaintiff's 50% allocation of fault.
Plaintiff has appealed the judgment of the trial court. Defendants, O'Rourke and Continental Casualty Company, have answered the appeal seeking reversal of the trial court's finding of liability as it concerns them. None of the other defendants either filed an appeal or answered plaintiff's appeal.

FACTS
On October 27, 1984, at approximately 9:30 p.m., plaintiff and her son were returning home from the Acadiana Mall in Lafayette on their bicycles. They were traveling on West Congress Avenue, a main thoroughfare in Lafayette, planning to turn right onto Guilbeau Road. Located at the intersection of West Congress and Guilbeau, on one corner, is a "Katie Anna" *391 automated teller machine and the Gateway Realty office building. Both properties are owned by the individual owners named in the suit. Exhibit I is a diagram of the site as observed by the plaintiff's expert, Louis Faxon, in March of 1985. [See Appendix.]
As depicted in the diagram, there is a driveway which joins the Gateway parking lot and the bank teller driveway. This opening measures approximately 26 feet in width between the barrier curbs on each side. These barrier curbs are located on the outside of the last parking places on each side of the lot and adjacent to the bank teller driveway. The distance from the top of the curb to the surface of the bank driveway is approximately 11½ inches.
On the evening in question, as the plaintiff approached the intersection of West Congress and Guilbeau, she decided to take a shortcut through the Gateway parking lot and bank drive exiting on Guilbeau. The Gateway Realty office was closed for business at the time. As plaintiff rode through the Gateway parking lot she struck the barrier curb which caused her to be thrown forward over the handlebars of her bicycle onto the bank driveway surface. Plaintiff was unable to move after the accident and was assisted by a passerby who transported her to the University Medical Center emergency room. She was seriously injured.

ACTION OF THE TRIAL COURT
After trial on the merits, the trial court found that:
"After considering the law, evidence and arguments of counsel, the Court finds that the curb did constitute a barrier to travel which was difficult to see at night, and was especially hazardous at such a busy intersection where traffic would foreseeably cut across. The Court does find that the curb presented an unreasonable risk of injury so as to be a `defect.'
"The Court also finds that the architect was negligent for failing to at least minimally supervise the construction and permitting a deviating from his original plan. The Court notes that there was only a verbal agreement with Gateway Realty and, in fact, the architect did have a limited function in the construction of this property. However, the Court does not feel that they met their minimum duty to supervise and/or certify and/or assure that their plans were carried out.
"Finally, the Court also finds that the contractor, Brian Pettijean, failed in his duty, in that he deviated from the architectural plans and created a hazardous condition.
"The Court also considers that the plaintiff was guilty of fault for not using reasonable care under the circumstances. She testified that she lived within the area where the accident occurred and had traveled it many times on her bicycle. However, in recent months preceding the accident, she had avoided using that area because she knew it was under construction. Further, plaintiff did not have a light on her bicycle and left the relatively well-lit sidewalks on the thoroughfares to cut through a less well-lit private parking lot."
The trial court apportioned fault among the parties as follows:

Plaintiff .......................... 50%
O'Rourke ........................... 17%
Gateway and its owners ............. 17%
Five Star .......................... 16%

The plaintiff was awarded special damages in the amount of $39,100 and general damages in the amount of $75,000. After reduction of these amounts by plaintiff's 50% fault, the trial court rendered judgment against O'Rourke and Continental Casualty Company, in solido, for $19,397, against Gateway and its owners, in solido, for $19,397, and against Five Star for $18,256. Costs were assessed against the parties in accordance with their percentages of fault.
Plaintiff appealed the judgment of the trial court. Plaintiff's principal complaint on appeal is that the trial court erred in finding her to have been at any fault at all. The alternative issues are stated above. Additionally, the plaintiff claims inadequate general damages were awarded. Defendants, *392 O'Rourke and Continental Casualty Company, seek reversal of the judgment finding them liable to plaintiff.

ARCHITECT'S LIABILITY
In the fall of 1983 O'Rourke was contacted by Jack Vincent Smith and asked to prepare architectural plans for the Century Plaza (Gateway) office building and parking lot. Jay Vincent Smith then assumed the position of representative for the owners on the project and all future dealings were between him and O'Rourke. Smith testified that there was no written contract with O'Rourke. The owners bought the building plans from O'Rourke, and the reason for hiring O'Rourke was primarily, Smith testified, to have the building planned properly. After that, the only time O'Rourke was consulted on the project was on a problem involving the bricks on the building.
After the Century Plaza plans for Gateway were drawn, a survey revealed different dimensions of the property which meant that the O'Rourke parking lot plan would not work. O'Rourke was not asked to do a revised layout for the parking lot. Instead, plans were developed to subdivide the property and Michael Hebert, a surveyor, was brought in to subdivide the land and plan parking. Both the O'Rourke plan and Hebert plan provided for peninsulas to separate the Gateway parking lot from the bank driveway. However, Brian Petitjean, owner of Five State, could not conform the existing lot dimensions to the plans, so he and Smith devised what they considered to be necessary to accommodate the required parking spaces. This resulted in the installation of the barrier curbs rather than the peninsulas. Smith testified that O'Rourke was not consulted about the change or the decision to put in the barrier curbs and Smith, in fact, did not know whether he had to get approval from the architect for changes.
O'Rourke argues in this appeal that plaintiff failed to prove the standard of care required of O'Rourke and this failure precludes a finding of negligence.
Plaintiff established at trial that an O'Rourke associate, William Stika, visited the site on occasion and prepared and submitted a certificate of completion to the State Fire Marshal's office. Stika testified that he did visit the site monthly to inspect the construction for purposes of allowing the contractor to make its periodic monetary draw and the only significance of the certificate of completion was that the building had been constructed in conformity with the standards and regulations governing fire safety. Stika testified that neither Petitjean nor Smith discussed substitution of the curbs or the peninsulas with him.
The trial court found that O'Rourke breached a duty to at least minimally supervise construction and in permitting a deviation from the original plan, even though it did find that O'Rourke had a limited function in the construction of the property. There was no issue raised at trial concerning any defect in O'Rourke's plans and in fact, plaintiff's expert, Louis Faxon, testified that there was no defect in O'Rourke's design. The trial court found the architect's negligence was a failure to supervise which resulted in a deviation from the architect's plans.
The plaintiff cites dictum from the case of Day v. National U.S. Radiator Corporation, 128 So.2d 660 (La.1961) in support of its contention that O'Rourke had a duty to plaintiff and breached that duty, thus causing her damages. The trial court, while not citing any authority, found that O'Rourke had a duty to minimally supervise the project. We are unable to agree with this conclusion.
The record shows that O'Rourke was engaged primarily to design the office building. No written contract was executed and the terms of any verbal agreement were not established. O'Rourke was paid for the plans. O'Rourke was not notified of or consulted concerning the selection of a general contractor. Plaintiff failed to establish that O'Rourke had any authority or obligation to control, direct or manage the operations of the general contractor. O'Rourke was consulted only once after the construction on the building commenced *393 concerning a problem or alteration. The owners engaged a surveyor to subdivide the property and plan parking, indicating that they had no expectations of O'Rourke in that regard.
We find no reasonable basis in the record upon which the trial court could conclude that the plaintiff proved any basis in law or contract for an obligation to supervise which should be imposed on O'Rourke. O'Rourke did not agree to supervise the project and the alleged "defect" was not designed by O'Rourke. O'Rourke had a very limited function with respect to inspections for purposes of allowing the contractor to make its periodic draw and in requesting that the fire marshal's office make its inspection for fire safety purposes. Plaintiff failed to prove that there was a breach of any legal duty to plaintiff by O'Rourke that caused her damages. The judgment of the trial court is reversed insofar as it casts O'Rourke and Continental Casualty Company in judgment and plaintiff's suit against O'Rourke and Continental Casualty Company is dismissed.

PLAINTIFF'S NEGLIGENCE
Plaintiff argues on appeal that the trial court erred in apportioning any fault to her because the duty owed to plaintiff by defendants was to protect plaintiff from her own carelessness. Therefore, any fault of plaintiff should not have been weighed against the fault of the defendants.
The trial court found that the curb constituted a defect in the premises, but that plaintiff was also at fault for not using reasonable care under the circumstances. We do not have before us the precise issue as to whether the curb in question constituted a defect. That is not an issue in the architect's appeal. Because we cannot reverse in favor of the two non-appealing parties, we need only examine the correctness of the trial court's findings with respect to the plaintiff's negligence.
The trial court found that plaintiff was familiar with the area in question and had traveled it many times on her bicycle. The court found further that plaintiff did not have a headlamp on her bicycle and chose to leave the relatively well-lit sidewalks on the thoroughfares to cut across a less well-lit private parking lot. These findings are supported by the record. Moreover, plaintiff testified that she had been through the bank lot and the Gateway lot many times. However, plaintiff did not recall any curbs being there. Plaintiff testified that the 26-foot wide driveway between the curbs on the Gateway lot was not wide enough for cars, even though she had no trouble negotiating it on previous occasions.
David Jones, plaintiff's son, testified that there were no curbs there before the accident and that the driveway was not wide enough for two cars. He testified that this route was a usual shortcut, both during the day and at night and that they were familiar with the lot.
These facts show a situation of plaintiff's careless inattention to the course she traveled. Plaintiff did not recall the curbs being there, and her son says that they were not there, though they were both familiar with the lot. The record amply proves that the curbs had been in place since June, at least. Plaintiff simply failed to observe them.
A landowner has a duty to correct or to warn of unreasonably dangerous conditions on his premises. In determining whether he has breached this duty, one must examine whether, in the management of his property, he has acted as a reasonable man in view of the probability of injury to others, not the possibility of injury. Shelton v. Aetna Casualty and Surety Company, 334 So.2d 406 (La.1976). A bicyclist, like a motorist, is required to maintain a proper lookout and to see and avoid any dangers or obstructions which he should have seen by the exercise of reasonable care. Townsend v. State, Department of Highways, 309 So.2d 887 (La.App. 3d Cir.), affirmed, 322 So.2d 139 (La.1975).
After considering all balancing factors between the construction and existence of the curb (defendants' action) and plaintiff's conduct (action), we cannot find that the trial court erred in finding plaintiff at fault. The plaintiff wants a finding of no *394 fault at all, but we cannot say that the trial court was clearly wrong in assessing plaintiff with 50%.[2]
PLAINTIFF'S COMPLAINT OF FAILURE TO FOLLOW "WATSON" GUIDELINES IN APPORTIONING COMPARATIVE FAULT
Counsel for plaintiff-appellant reads the Louisiana Supreme Court case of Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La.1985) as setting guidelines for apportioning comparative fault between a plaintiff at fault and multiple defendant offenders. It is counsel's theory that under Watson:
"[i]f, however, plaintiff's fault is to be compared with that of the defendants, then her fault should have been compared with that of each defendant rather than all of them, through application of the Watson guidelines enunciated by the Supreme Court."
We do not find any such suggestion in Watson. The Supreme Court does discuss what it refers to as apportionment guidelines. However, what is referred to consists of "various factors which may be assigned." We reject plaintiff-appellant's contention that the trial court erred in its apportionment procedure.[3]

*395 SOLIDARY LIABILITY OF DEFENDANTS
Plaintiff argues that the trial court erred in failing to cast the defendants, in solido, for her reduced damages under the first paragraph of LSA-C.C. art. 2324 prior to its amendment by Acts 1987, No. 373, § 1. Before the amendment of the article in 1987 it read as follows:
"Art. 2324. Liability for assisting or encouraging wrongful act
"Art. 2324. He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person, for the damage caused by such act.
"Persons whose concurring fault has caused injury, death or loss to another are also answerable, in solido; provided, however, when the amount of recovery has been reduced in accordance with the preceding article, a judgment debtor shall not be liable for more than the degree of his fault to a judgment creditor to whom a greater degree of negligence has been attributed, reserving to all parties their respective rights of indemnity and contribution."
The trial court apparently utilized LSA-C.C. art. 2324 B, as amended by Acts 1987, No. 373, § 1, in confecting its judgment. We find that this was error. We do not believe that the 1987 amendment to LSA-C.C. art. 2324 should be accorded retrospective application because it effects a substantive change in the law. LSA-C.C. art. 6. Morrison v. J.A. Jones Construction Company, Inc., 537 So.2d 360 (La.App. 4th Cir.1988). Between the liable parties liability should have been imposed, in solido, pursuant to the second paragraph of LSA-C.C. art. 2324.
For all practical purposes, this puts plaintiff in the same position as she would be if the 1987 amendment to Article 2324 were applied.

REAPPORTIONMENT OF COMPARATIVE FAULT
With the dismissal of plaintiff's action against Don J. O'Rourke & Associates, Ltd. and its insurer, the 17% of fault apportioned to O'Rourke is lost to plaintiff. O'Rourke answered the appeal on the issue of its liability and prevails in this court of appeal on that issue. Resolution of that issue in O'Rourke's favor does not touch on the issue of plaintiff's fault in running into the parking lot curb. The two other defendants are before this court on appeal despite the fact that they neither appealed nor answered the appeal. Under the circumstances, the owners and builder are open to all complaints made in this appeal by plaintiff but have no appellate complaints we could consider. See Kennedy v. Mitchell Engineering, 518 So.2d 1128 (La. App. 4th Cir.1987), writs denied, 523 So.2d 231 and 523 So.2d 232 (La.1988).
Since the remaining defendants neither appeal nor challenge the trial judge's allocation of 50% of the fault of Christel Jones, we are somewhat limited in our review on this particular point. With the issue in this posture we could decide that she was guilty of no fault at all or of a degree of fault less than 50%. We do not feel that the posture of the appeal would allow us to raise her percentage to her disfavor. See LSA-C. C.P. art. 2133; Gadman v. State, Through Department of Transportation and Development, 493 So.2d 661 (La.App. 2d Cir. 1986), mod. 497 So.2d 1001 (La.1986). As to the two non-appealing appellees, owners and builder, the situation is different. The appeal by plaintiff brought up the entire case and all issues for consideration by this court. Kennedy v. Mitchell Engineering, supra.
Without doing violence to the balancing factors we should follow under Watson *396 and with deference to the balancing done by the trial court, we reapportion the comparative liability as follows:

Christel Jones ...................... 50%
Gateway, Inc. and its owners ........ 26%
Five Star, the builder .............. 24%

As noted above the judgment which we will recast should provide for a judgment in solido against the owners and builder.

QUANTUM
In a case such as this, the assessment of damages is left to the much discretion of the trial judge. LSA-C.C. art. 2324.1. The trial court's findings of fact with respect to plaintiff's injuries were as follows:
"Mr. Patin [a passerby] transported plaintiff to the University Medical Center emergency room, where x-rays indicated a displaced femoral fracture. Surgery was performed the following day to reconnect the ball part of the long bone of the leg, which fits into the hip joint. Plaintiff was discharged from University Medical Center on November 3rd, 1984 on non-weight bearing crutches.
"Within a few months plaintiff was unable to straighten her hip out, causing an awkward gait and a shortening of the left leg. Dr. John Schutte, an orthopedist, testified that this flexion contracture was probably due to the fracture not healing well, excessive scar formation, and the long period during which plaintiff had kept her hip flexed. Despite physical therapy, the contracture problem worsened. Dr. Schutte performed surgery to release the contracture on January 30th, 1986, discharging plaintiff on February 7th, 1986. Although the surgery did not accomplish full extension, he was able to reduce the contracture from forty (40%) percent to ten (10%) percent.
"Unfortunately, again several months following surgery, the flex contracture began worsening. Dr. Schutte referred plaintiff to a specialist in the Charity Hospital system for a second opinion. They recommended that plaintiff wait until she had enough pain to warrant a total hip replacement. Dr. Schutte also testified that her present hip condition is a permanent disability, due to stiffness and the disruption of her gait.
"The orthopedic surgeon, Dr. J. Frazer Gaar, to whom plaintiff was referred to by counsel for Don O'Rourke, also testified that plaintiff suffered from a severe hip problem. He noted significant restricted motion, painful movement of the hip, limited internal rotation, and flexion contracture. It was Dr. Gaar's opinion that the neck of the femur (the ball joint bone) is dying and collapsing. He felt if plaintiff were to submit to surgery fairly soon, a partial hip replacement might resolve the problem. Dr. Gaar felt that after six (6) months rehabilitation, there was an excellent chance that plaintiff would have significant pain relief. However, both doctors testified that her hip would not be completely normal, but she would probably be able to baby-sit [sic]. Dr. Schutte did not feel she could tolerate a job standing for extended periods. Plaintiff is a forty-six (46) year old woman whose previous work experience included working at a coffee shop, managing a bakery, and some baby-sitting [sic].
"Plaintiff testified that she can walk, but not for very long. She uses a shopping cart in stores to steady herself. At the time of the accident she did not own a car, and relied solely upon walking and biking for transportation.
"Dr. Schutte also treated plaintiff for left shoulder pain, which he diagnosed as tendonitis. Because it did not surface until April of 1985, he was unsure if it was caused by the accident. He did feel that the accident may have caused a flare-up of a pre-existing shoulder problem, or perhaps the extended use of crutches may have aggravated her shoulders. The Court feels his explanation is entirely plausible, and attributes her temporary left shoulder pain to the accident at issue."
In summary, plaintiff suffered a displaced femoral fracture of the right hip. Surgery was performed the following day. Plaintiff developed a flexion contracture of the hip due to the fracture not healing well, excessive scar formation, and the long period *397 of time during which plaintiff kept her hip in a flexed position. Further surgery was performed to release the contracture in January of 1986. However, the surgery was not entirely successful and further surgery involving either partial or total hip replacement is warranted in the future. Plaintiff suffers a permanent disability as a result of her injury.
Based upon these factual findings, the trial court awarded damages as follows:

Past and future medical expenses .........$ 34,000
Property damage ............................. 100
Pain and suffering, past and future ........50,000
Permanent disability .......................25,000
Impaired earning capacity ...................5,000
 ________
 $114,100

Plaintiff argues that her award for general damages should be increased to an amount not less than $200,000.
After careful review of the record and the trial court's findings of fact, we cannot say that the trial court abused its much discretion in the assessment of plaintiff's damages. The award is affirmed.

CONCLUSION
Due to the difficult procedural posture of this case on appeal, we must affirm the award of damages in favor of plaintiff except insofar as the judgment casts defendants, O'Rourke and Continental Casualty Company, for any part of plaintiff's damages. Judgment in favor of plaintiff and against O'Rourke and Continental Casualty is reversed and set aside. The suit against those defendants is dismissed. The judgment is amended to cast Gateway, its owners and Five Star, in solido, for plaintiff's damages according to the respective percentages of their fault as enunciated herein. In all other respects the judgment is affirmed. The costs of this appeal are assessed equally to plaintiff, Gateway, its owners and Five Star.
REVERSED IN PART, AMENDED IN PART, AFFIRMED AS AMENDED.

*398 APPENDIX

EXHIBIT 1

NOTES
[1] Plaintiff filed suit against State Farm Casualty and Allstate as the insurers of Gateway and the individual owners. State Farm was dismissed on a motion for summary judgment on the issue of coverage and Allstate was dismissed on plaintiff's motion. Various other exceptions and third party demands were filed by the parties which are not before us in this appeal.
[2] The writer of this opinion wishes to express here a reservation concerning the trial court's finding that the plaintiff was only 50% at fault. Assuming that the defendants did breach some duty owed to the plaintiff, if the writer was viewing the facts as a trier of fact, it would be difficult for the writer not to charge the plaintiff with a far greater proportion than 50%.
[3] In order to give full expression to the plaintiff's position in this regard we quote the following from counsel's brief:

"The primary legal issue in this appeal has to do with the determination and allocation of comparative fault among the parties to the lawsuit. In Watson v. State Farm Fire & Casualty Company [469 So.2d 967 (La.1985) ], the Louisiana Supreme Court noted the absence of any legislative direction in the determination and assessment of comparative fault. It stated it would take the opportunity to offer guidelines, quoted with approval from the Uniform Comparative Fault Act:
"`In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relationship between the conduct and the damages claimed.'
"The Court went on to set out those guidelines, based on the various factors which may influence determination of the degree of fault by the trier of fact.
"It is readily apparent in this case that the learned trial judge did not undertake such a comparative analysis but, instead, simply split the fault 50-50 between the plaintiff, on the one hand, and all the defendants on the other, then dividing the defendants' fault as equally as possible among them. The resulting percentage of fault allocable to each defendant resulted in a monetary award to the plaintiff against each defendant because in each case the plaintiff's fault was approximately three times greater than the fault of the defendant; hence, there was no solidary judgment in plaintiff's favor and against the defendants.
"Had the trial court followed the Supreme Court's guidelines and compared the fault of the plaintiff to each defendant, and if the plaintiff's fault was no greater than that of any defendant, then the resulting apportionment should have been no greater than 25% to the plaintiff. In that event, plaintiff's judgment against the defendants would have been solidary."
Later in the brief, after a discussion of balancing factors, the following summary appears:
"Considering all of the above factors, any fault on the part of Mrs. Jones was substantially less than the fault of any defendant. Since the trial judge did not articulate the basis for apportionment of fault among the defendants as envisioned by LSA-C.P. [sic] Article 1917, we are unable to determine how he reached this apportionment, or through what reasoning he reached the conclusion that plaintiff's fault was three times greater than that of any defendant. Had he followed the Supreme Court's guidelines and compared her fault against each defendant, rather than comparing her fault against the defendants in globo, and if he concluded that her fault was equal, but not greater than, that of the defendants, then he should have reduced her damages by 25% and apportioned 100% of the balance among the defendants according to their respective degrees of fault. This would have resulted in a judgment equating plaintiff's fault with that of the defendants 50 and would have complied with LSA-C.C. Article 2323 51 and permitted a solidary judgment as provided in LSA-C.C. Article 2324 as it reads at the time of this accident.52
"50 By reducing the award by 25% and casting each defendant for 33 1/3% of the balance, the effect would be that plaintiff and each defendant would be responsible for 25% of the total damages, thus equating plaintiff's fault with that of each defendant.
"51 `When contributory negligence is applicable to a claim for damages ... the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person.'
"52 `Persons whose concurring fault has caused injury, death of [sic] loss to another, are also answerable in solido, provided, however, when the amount of recovery has been reduced in accordance with the preceding article, a judgment debtor shall not be liable for more than the degree of his fault to a judgment creditor to whom a greater degree of fault has been attributed....' [as it read at the time of the accident and before the amendment of 1987.]"