578 So.2d 1199 (1991)
Manuel PEREZ
v.
STATE of Louisiana, Through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
Darryl GONZALES
v.
STATE of Louisiana, Through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Manuel Perez and Aetna Casualty and Surety Co.
Nos. 90-CA-1148, 90-CA-1149.
Court of Appeal of Louisiana, Fourth Circuit.
April 23, 1991.
Writ Denied June 21, 1991.
*1201 Gregory S. Duhy, Chalmette, for plaintiff/appellant, Manuel Perez.
William J. Guste, Atty. Gen., Gregory J. Lannes, Jr., Sp. Asst. Atty. Gen., Chalmette, for defendant/appellant, State of La. Dept. of Transp. and Development (Office of Highways).
Before GARRISON, BARRY and BECKER, JJ.
BARRY, Judge.
Manuel Perez and Darryl Gonzales were injured in a one car accident on La. Hwy. 46 in St. Bernard Parish. Mr. Perez sued the State through the Department of Transportation and Development [DOTD] and DOTD answered. Mr. Gonzales filed suit against the State through DOTD, Mr. Perez and his insurer Aetna Casualty & Surety Company. DOTD answered and third partied Mr. Perez and Aetna. Mr. Perez and Aetna answered and third partied DOTD. Aetna intervened in both suits to collect the amount paid in medical expenses to Mr. Perez and Mr. Gonzales. The cases were consolidated.
It was stipulated that Mr. Perez would reimburse Aetna $2,000 (medical benefits) from any judgment or settlement he might receive. It was also specified that Aetna paid Mr. Gonzales $4,513 for medical expenses. The checks, bills and Mr. Gonzales' release of Aetna and Mr. Perez (reserving rights against DOTD) were admitted.
Aetna's subrogation rights were to be determined by the trial court. The State's third party demand against Mr. Perez and Aetna's third party demand against the State were dismissed with prejudice pursuant to an exception of no cause or right of action. That judgment was not appealed.
The trial court awarded $639,179.30 to Mr. Perez and $10,000 to Mrs. Geraldine Perez, the awards to be reduced by Mr. Perez's comparative negligence of 10 percent. The court awarded Mr. Gonzales $9,532.
DOTD specifies as error:
(1) The conclusion that the accident was caused by the highway and/or its shoulder which presented an unreasonable risk of harm;
(2) The award to Mr. Perez of $367,000 for lost wages and earning capacity;

*1202 (3) Failure to attribute cause of the accident or comparative negligence to the unknown driver.
Mr. Perez appeals specifying as error:
(1) His 10% comparative negligence;
(2) The award of $367,000 in lost wages and earning capacity;
(3) The award of $25,000 in future medical expenses;
(4) No award for past, present and future mental anguish and suffering;
(5) The awarding of $225,000 in past, present and future pain and suffering;
(6) The failure to award costs and expert fees;
(7) The award of $10,000 to Mrs. Perez for past, present and future loss of consortium.

TESTIMONYLIABILITY
Manuel Perez testified that on September 10, 1982 at 3:00 or 4:00 p.m. he was driving his 1981 Blazer truck at 40 to 50 m.p.h. (55 m.p.h. speed limit) on Hwy. 46 toward St. Bernard with his son-in-law, Darryl Gonzales. It was raining when Mr. Perez observed an approaching vehicle cross the center line and move into his lane. Mr. Perez moved to the right to avoid the vehicle and his right front wheel went off the blacktop and on the tapered shell shoulder.
Mr. Perez said there was an 8" to 10" drop to the shoulder. The bottom of the truck scraped the blacktop as the vehicle left the road. Mr. Perez tried but could not move the vehicle back on the roadway. The shells gave way and his vehicle went into the canal. He rolled down the window and swam to land.
Mr. Perez testified that he checked the shoulder as he climbed up from the canal. The width of the shoulder was less than a foot and there was a three foot drop from the shoulder to the canal. The shells on the shoulder were loose rather than packed.
Darryl Gonzales testified that it was raining and the Perez car was approaching a turn to the left with cars coming from the other way. He felt the truck "jerk off the road", looked up and saw a car pass by the vehicle. Mr. Perez's truck went into the canal. After Mr. Gonzales got out of the canal he and Mr. Perez examined the shoulder. They saw where the chassis of the truck hit the blacktop as it left the roadway. He said there was an 8" to 11" drop from the highway to the shoulder which consisted of ground up oyster or clam shells. The shells were loose and fell apart when he and Mr. Perez climbed up from the water. He said the 1½ foot shoulder was sloped toward the canal.
Deputy Wayne Mones of the Sheriff's Office testified that he found the Perez truck in the bayou. It had rained all day. The deputy noted a 4" to 8" drop from the road to the shoulder which was one to two feet wide. He said the shoulder had washed away in several areas and sloped toward the canal. He noticed a "gouge mark" on the edge of the road where the back bumper hit the surface and tore away parts of the shoulder. He did not recall any statements by Mr. Perez or Mr. Gonzales.
Deputy Mones found no defect with the vehicle and marks on the inside right front tire which indicated that Mr. Perez attempted to turn back onto the roadway. He said the depth of the drop from the road to the shoulder prevented the vehicle from getting back on the road. Deputy Mones identified his report which states that the cause of the accident was the roadway condition and defective shoulder.
Dwayne Evans, an expert in highway regulations, testified that Louisiana generally follows standards published by the American Association of State Highway Officials. Regulations prior to 1982 were in 1965 and 1954. The 1982 and 1965 publications indicate that the minimum shoulder width for the lowest class road should be four feet. The 1965 version prefers a six to eight foot shoulder. Shoulders should be flush with the roadway or as near as possible. Mr. Evans visited the accident scene on March 30, 1987 and found that the shoulder, composed of shells, dirt and grass, varied in width from one to two feet. He stated the one to two foot shoulder at *1203 the accident site did not meet the regulations.
On cross-examination Mr. Evans testified that the standards contained design regulations, but the Louisiana Maintenance Manual was different. Mr. Evans believed a drop-off of two inches would require repair work. The State considered a drop-off of four or five inches an emergency situation.
Mr. Evans stated that the standards do not set out a materials composition for a shoulder, but the shoulder should support a vehicle's weight. He stated that in south Louisiana shoulders of compacted shells mixed with dirt are used. He said a drop of six to eight inches would cause the under-carriage of a vehicle to scrape the edge of the roadway and the vehicle would go out of control. It was his opinion such a drop is dangerous. Mr. Evans stated that the one to two foot shoulder he measured in 1987 was functionally no shoulder because a driver cannot keep a vehicle within that narrow limit.
Robert Roth, DOTD district maintenance engineer, produced the December 14, 1982 annual inspection report on Hwy. 46 (several months after the accident). He testified there were inspections of roads usually every two weeks throughout the State. However, Mr. Roth did not testify about the condition of Hwy. 46 on the date of the accident. He said DOTD is only obligated to maintain a shoulder width as it was built.
Dr. Olin Dart, an expert in highway construction, testified[1] that there was no standard in 1924 when Hwy. 46 was constructed as Hwy. 32. The roadway was changed to Hwy. 46 in 1955. An overlay was added on November 16, 1981 and there was shoulder restoration due to storm damage in March, 1983. Dr. Dart said there was no evidence that the road had been rebuilt or redesigned. He visited the accident site in 1988 and he found a 2'-3' shoulder flush with the roadway. He examined the area in 1989 on the morning prior to his deposition and noted the same condition except for concrete debris to stabilize the base of the shoulder.

LIABILITY LAW
DOTD is not a guarantor of every traveler's safety. DOTD owes a duty to keep the highways and its shoulders reasonably safe for non-negligent motorists. That duty includes passengers in vehicles which leave the road. Liability based on negligence under La.C.C. Art. 2315 is imposed when DOTD is actually or constructively aware of a hazardous condition and fails to take corrective action within a reasonable time. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980); Campo v. Louisiana Power & Light Company, 560 So.2d 966 (La.App. 4th Cir.), writ denied 566 So.2d 396 (La.1990).
Liability based upon strict liability under La.C.C. Art. 2317 is imposed if the plaintiff proves that the thing which caused the damage was in the care or custody of the defendant, that the thing had a vice or defect, that it occasioned an unreasonable risk of injury to another, and that an injury was caused by the defect. Crowell v. City of Alexandria, 558 So.2d 216 (La.1990). La.R.S. 9:2800 B limits the liability of a public entity (under La.C.C. Art. 2317) to cases where the public entity had active or constructive notice of the particular vice or defect and had a reasonable opportunity to remedy the defect and failed to do so.
Under either theory the claimant must prove a defect and that the thing presented an unreasonable risk of harm which resulted in damage. Marziale v. Maney, 529 So.2d 504 (La.App. 4th Cir.), writ denied 533 So.2d 22 (La.1988). In both instances the claimant must prove that the owner breached his duty to take reasonable steps to prevent injury. Kent v. Gulf States Utilities, 418 So.2d 493 (La.1982); Myers v. State Farm Mutual Automobile Insurance Company, 493 So.2d 1170 (La.1986).
Whether the State through DOTD breached its duty and whether the roadway and shoulder at the scene of an accident *1204 were in an unreasonably dangerous condition depend on the facts of each case. Shoulder is defined as "that portion of the highway contiguous with the roadway for accommodation for stopped vehicles, for emergency use and for lateral support of base and surface." La.R.S. 48:1(20). Yet there are many Louisiana roads that have narrow shoulders which cannot accommodate a vehicle. The failure of DOTD to reconstruct the State's highways to meet current standards does not establish the existence of a hazardous defect. Myers, 493 So.2d at 1170; Kyle v. City of Bogalusa, 506 So.2d 719 (La.App. 1st Cir.1987).

TORT LIABILITY

(DOTD ERROR NO. 1)
DOTD argues that the trial court erred by finding the accident was caused by the highway and/or the shoulder presenting an unreasonable risk of harm. Mr. Perez argues that the highway and/or the shoulder was defective because DOTD did not maintain it or failed to repair defects.
An abrupt drop from a road to a shoulder is a defect. Grappe v. State, DOTD, 462 So.2d 1337 (La.App. 3rd Cir.), writ denied 466 So.2d 1302 (La.1985). The duty to maintain reasonably safe highways and shoulders does not require that a shoulder be widened to meet current standards of four to eight feet; however, that duty does require the State to keep a shoulder stable and level with the roadway. Sinitiere v. Lavergne, 391 So.2d at 821.
Both Mr. Perez and Mr. Gonzales testified that there was at least an 8" drop-off from the highway to the unstable and very narrow shoulder of loose shells. Deputy Mones noted a 4" to 8" drop-off to the shoulder which sloped toward the canal and was washed away in sections.
DOTD introduced no evidence to refute the allegation that on the day of the accident there was a 6" to 8" drop from the roadway to the unstable shoulder. The trial court accepted the testimony of the plaintiffs and Deputy Mones and concluded:
An oncoming car suddenly moved across the center line into Manuel Perez's path who swerved to the right to avoid the car. A shoulder of the road in this area consisted of less than a foot of loose shells, which shells were at least 8 inches below the paved road surface and sloped into a canal adjoining the road.
* * * * * *
The stretch of Louisiana 46 at the accident location, and extending for several miles in either direction lacks a functional shoulder. Louisiana Department of Development and Transportation crews and supervisory personnel travelled this road within one year prior to this accident, and had knowledge of the roads [sic] condition, rendering the State of Louisiana through the Department of Transportation and Development liable to the plaintiffs for the injuries they suffered at [sic] a result of the defective roadway.
On appellate review the trial court's reasonable factual findings, evaluations of credibility, and inferences of fact should not be disturbed. Sistler v. Liberty Mutual Insurance Company, 558 So.2d 1106 (La.1990); Rosell v. ESCO, 549 So.2d 840 (La.1989).
We have no basis to find manifest error in the trial court's finding that the roadway was defective. DOTD's duty of maintaining the highway encompasses the risk that a driver might have to leave the roadway in order to avoid an accident as Perez did. We find no manifest error in the court's evident conclusion that the defective roadway was a cause (in-fact and under a duty risk analysis) of the accident and that DOTD had actual or constructive knowledge of the defect.

COMPARATIVE NEGLIGENCE

(DOTD ERROR NO. 3, PEREZ ERROR NO. 1)
Comparative negligence presents a question of law when it is part of the inquiry as to the extent of a defendant's duty under a duty risk analysis. Varnado v. Continental Insurance Company, 446 *1205 So.2d 1343 (La.App. 1st Cir.1984). The trial court's apportionment of fault under our comparative negligence scheme is a question of fact which will not be disturbed unless it is clearly wrong. Efferson v. State, Through DOTD, 463 So.2d 1342 (La. App. 1st Cir.1984), writs denied 465 So.2d 722 (La.1985). In apportioning fault the trier of fact should consider the nature of the conduct of each party and the extent of the causal relationship between the conduct and the damages claimed. Watson v. State Farm Fire and Casualty Insurance Company, 469 So.2d 967 (La.1985).
Mr. Perez argues that the trial court committed manifest error by finding him 10 percent negligent. The trial court did not explain that finding. Although the trial court found that Mr. Perez swerved to avoid an oncoming car, it must have concluded that he failed to control his vehicle or in some way could have avoided the accident. Under these circumstances the trial court was not clearly wrong in assessing 10 percent comparative fault to Mr. Perez.
The State argues that if this Court accepts the existence of a phantom vehicle, then that driver should be at least 80% comparatively negligent and the award against the State should be reduced.
The trial court acknowledged the fault of the "oncoming car" but failed to assess any percentage of fault. The trial court was clearly wrong. The phantom vehicle was a major but not the sole cause of the accident. Mr. Perez was 10 percent negligent, hence 90 percent of the fault must be apportioned. See La.C.C. Art. 2323.
DOTD failed to properly maintain the narrow sloped shoulder so that a driver could use the shoulder in the case of an emergency. However, the unknown car precipitated the emergency and caused Mr. Perez to move off the roadway. The unknown driver, whether a party or not, must be considered in the apportionment of fault. La.C.C.P. Art. 1812 C; Devereux v. Allstate Insurance Company, 557 So.2d 1091 (La.App. 2d Cir.1990); Varnado, 446 So.2d at 1343. See also Lemire v. New Orleans Public Service, Inc., 458 So.2d 1308 (La.1984). After considering the conduct of each party and the causal relationships and factors set out in Watson, 469 So.2d at 967, we find the unknown driver 50 percent at fault and DOTD 40 percent at fault.
This reduced percentage of fault does not relieve the State of its responsibility to pay the full amount of the judgment because the accident occurred in 1982. La. C.C. Art. 2324 (as amended by La.Acts 1979, No. 431, § 1) applicable at the time of the accident provided:
He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido with that person, for the damage caused by such act.
Persons whose concurring fault has caused injury, death or loss to another are also answerable, in solido; provided, however, when the amount of recovery has been reduced in accordance with the preceding article, a judgment debtor shall not be liable for more than the degree of his fault to a judgment creditor to whom a greater degree of negligence has been attributed, reserving to all parties their respective rights of indemnity and contribution.
In 1987 C.C. Art. 2324 was amended and changed the obligation from in solido to joint liability[2] and it may not be *1206 applied retroactively to an accident which occurred prior to the effective date of the amendment. Jones v. Gateway Realty, Inc., 550 So.2d 388 (La.App. 3rd Cir.1989), writs denied 556 So.2d 27; 556 So.2d 30 (La.1990); Morrison v. J.A. Jones Construction Company, Inc., 537 So.2d 360 (La.App. 4th Cir.1988).
Mr. Perez is 10 percent negligent and DOTD is 40 percent negligent. Because DOTD's fault is greater than Mr. Perez's comparative fault, DOTD is liable in solido with the unknown driver and is obligated to pay the whole award. See La.C.C. Art. 1794.

AWARD FOR LOST WAGES AND LOSS OF EARNING CAPACITY

(DOTD ERROR NO. 2; PEREZ ERROR NO. 2)
DOTD argues that the trial court erred by awarding $367,000 to Mr. Perez for lost wages and loss of earning capacity. It contends Mr. Perez's failure to produce his tax returns for 1980 and 1981 and any record of his diesel repair or shrimping business should greatly reduce the award. Mr. Perez argues the amount was low and should be increased.
Plaintiff has the burden to prove each and every element of damage claimed. Borden, Inc. v. Howard Trucking Company, Inc., 454 So.2d 1081 (La. 1983); Woodfield v. Dugas, 450 So.2d 1011 (La.App. 1st Cir.1984). Damages for impairment of earning capacity cannot be calculated with mathematical certainty and the trial court is accorded broad discretion. Klein v. Himbert, 474 So.2d 513 (La.App. 4th Cir.1985); Johnson v. Dixon, 457 So.2d 79 (La.App. 4th Cir.), writ denied 462 So.2d 196 (La.1984). Calculations of actuarial experts merit substantial consideration. The court should consider plaintiff's physical condition before the accident, plaintiff's work record, amount earned in previous years, and the probability that except for the injury the plaintiff would have earned similar wages the rest of his life. Garrett v. Celino, 489 So.2d 335 (La.App. 4th Cir. 1986).
In reviewing an award the appellate court must look to the facts and circumstances of the individual case. An appellate court should not disturb an award unless the record shows that the trial court abused its much discretion. The question is whether the evidence and justifiable inferences support the award. If the appellate court finds an abuse of discretion, it may only change the award to lower it (or raise it) to the highest (or lowest) point which is reasonably within the court's discretion. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Bitoun v. Landry, 302 So.2d 278 (La.1974).
Gross rather than net income is the proper measure in formulating lost wages and loss of earning capacity. Harris v. Tenneco Oil Company, 563 So.2d 317 (La. App. 4th Cir.), writ denied 568 So.2d 1062 (La.1990).
According to the deposition testimony of Dr. Gorman, Mr. Perez had little likelihood of employment and was virtually unemployable because of his limited fifth grade education and physical impairment (without considering the possibility of psychological problems). The experts relied upon that information in their calculations.
Dr. Goodman, plaintiff's expert in economics, used Mr. Perez's 1982 through 1985 tax returns and annualized his 1982 earnings prior to the accident to compute a full year's income. Using an increase of 6.3% per annum and deducting the income tax in actual earnings for the years 1983, 1984 and 1985, he estimated lost wages of $156,227.13. Dr. Goodman computed future loss of earning capacity based upon a ten year work expectancy with a discount rate of 8.5% to arrive at $312,939.70. No figure on gross wages was given.
*1207 Dr. Burford,[3] the defense expert in economics, used Mr. Perez's tax returns for 1982 through 1985 although he stated it would be preferable to have the tax history prior to 1982. He felt the information was incomplete, but accepted the age and work expectancy used by Dr. Goodman. According to his report and deposition testimony, Dr. Burford annualized the 1982 earnings and calculated a gross wage of $22,383 for 1982. Dr. Burford calculated lost gross wages at $112,325 using a 4.1% annual increase rate and taking into account Mr. Perez's actual income for 1983, 1984 and 1985. From 1986 on he assumed that Mr. Perez had no income. Dr. Burford figured future lost gross wages to be $247,350 based on a ten year work expectancy, a growth rate of 5.5%, and a discount rate of 8.5%.
Neither expert considered Mr. Perez's income from shrimping or fishing because none was reported on the 1982 tax return. Both experts also considered only the income reported in 1982 as to Mr. Perez's earnings as a diesel mechanic ($8,418) and income from his partnership interest in the business ($7,026). The court heard Mr. Perez's testimony that he earned $20 to $25 per hour and worked a couple of days a week as a diesel mechanic. The court also heard Mr. Perez's testimony as to the $2,000 to $3,000 (less $500 in expenses to be divided three ways with Mr. Perez to receive two-thirds as owner of the boat) earned weekly during a usual shrimping season. However, no books or ledgers were introduced to support that testimony. The 1982 tax return included no shrimping income.
DOTD argues that Mr. Perez's failure to produce the requested (by subpoena) 1980 and 1981 tax returns should greatly reduce his recovery. Mr. Perez claims that he could not find those returns and the DOTD did not object to the use of only the 1982 through 1985 returns during trial nor did it request sanctions against Mr. Perez or file a motion to compel or other discovery motion to obtain those returns.
Both experts were able to make their computations from the admitted tax returns and those calculations were considered by the trial court. DOTD's expert computed a total gross loss of $359,695. We cannot say that $367,000 was an abuse of the trial court's wide discretion. We also find no merit in Mr. Perez's argument that the award was inadequate.

FUTURE MEDICAL EXPENSES

(PEREZ ERROR NO. 3)
Mr. Perez claims $25,000 for future medical expenses is inadequate. The trial court heard testimony by Dr. Brent and Mr. Perez as to continuing medical problems and the remote possibility of a future surgery. The court also heard Dr. Stamps' testimony that Mr. Perez had a dysthymic disorder which would require therapy.
The trial court acknowledged that Mr. Perez would require medical treatment indefinitely and concluded that $25,000 was appropriate. We have no basis to find an abuse of discretion.

MENTAL ANGUISH

(PEREZ ERROR NO. 4)
Mr. Perez argues that the trial court erred by not awarding damages for mental suffering. The court had the deposition of Dr. Stamps who found withdrawn behavior, anxiety and irritability. The court considered Dr. Stamps' diagnosis of systemic dysthymic disorder which was characterized as a moderately severe mental disorder. The trial court did not make an award for mental anguish.
Apparently the trial court believed that any mental anguish was covered in the general damages. We conclude the trial court did not abuse its much discretion.

*1208 PAIN AND SUFFERING

(PEREZ ERROR NO. 5)
Mr. Perez argues that $225,000 for pain and suffering is inadequate. Our consideration is the severity and duration of the pain. Anthony v. Hospital Service District No. 1, 477 So.2d 1180 (La.App. 1st Cir.1985), writ denied 480 So.2d 743 (La. 1986).
Dr. Brent, the treating orthopedist, testified that his diagnosis of Mr. Perez right after the accident was a disk rupture at the L5-S1 level and possibly at the L4-5 level. Although he recommended surgery, Mr. Perez would not consent and left the hospital with only medications. In October, 1982 Dr. Brent performed a total laminectomy at the L5 vertebra and spurring at the L4-5 level was removed. After the surgery Mr. Perez continued to complain of weakness in the right leg and back pain. He continued to have pain even after receiving anti-inflammatory injections, oral steroids and cortisone injections. He would do better for a period of time but then would experience increased pain. He had used a corset since the surgery. Increased activities always seemed to give him increased pain. Dr. Brent continued to treat him for the same complaints.
Dr. Brent noted that the L4-5 area was the sight of the disk surgery years prior to the accident. However, after that surgery he was able to return to work until the accident in September, 1982. Dr. Brent said that degenerative disease was present. Dr. Brent testified that Mr. Perez would continue to have periods of discomfort which would require medical treatment. The only possible additional surgery would involve a fusion, which the doctor had avoided doing in 1982. Dr. Brent would consider that only if Mr. Perez became paralyzed or suffered some dysfunction.
Mr. Perez testified to his continuing pain since the operation. He stated that Dr. Brent was still treating him and had suggested the possibility of a future operation. Mrs. Perez testified to his first operation around 1971, his return to work after that time and his occasional pain thereafter until 1982. She testified to his continuing problems after the 1982 surgery. He cannot sit for very long, he gets irritable, and he walks a lot because he is in pain. Even wearing a corset gives him pain. He complains daily and has trouble sleeping.
The trial court evaluated the testimony of Dr. Brent, Mr. Perez and Mrs. Perez. We conclude the record supports the award for pain and suffering.

EXPERT FEES

(PEREZ ERROR NO. 6)
Mr. Perez submits that expert fees are not included and should be assessed against DOTD. The trial court declared that "all costs of these proceedings" shall be paid by the State through DOTD. La. R.S. 13:3666 B provides that the court shall determine the amount of expert fees "which are to be taxed as costs to be paid by the party cast in judgment." The fees can be based on testimony during trial or by a rule brought by the party in whose favor the judgment is rendered.
La.R.S. 13:3666 B specifies that an expert's fee be taxed as costs and indicates that a judgment which includes "costs" encompasses expert fees. Bentley v. Industrial Fire Protection, Inc., 350 So.2d 982 (La.App. 2d Cir.1977).
However, when the trial court makes no ruling on the payment of expert witness fees, the proper procedure is for the prevailing party to file a rule to show cause in the trial court for the setting of those fees. See La.C.C.P. Arts. 1920 and 2088; Taylor v. Dixie Dandy, 493 So.2d 654 (La.App. 2d Cir.1986).

LOSS OF CONSORTIUM

(PEREZ ERROR NO. 7)
Mr. Perez argues that the $10,000.00 award to Mrs. Perez for lack of consortium is inadequate and should be increased to $25,000. Consortium cannot be calculated with certainty and depends on the parties' demeanor and will not be set aside absent an obvious abuse of discretion. Schwamb v. Delta Air Lines, Inc., 516 *1209 So.2d 452 (La.App. 1st Cir.1987), writs denied 520 So.2d 750 (La.1988); Finley v. Bass, 478 So.2d 608 (La.App. 2d Cir.1985).
We conclude that the trial court did not abuse its much discretion.
The judgment is affirmed. Costs of appeal are to be paid by the appellant.
AFFIRMED.
NOTES
[1] Mr. Perez argues that Dr. Dart's deposition should not be considered because it was taken after the time period allowed by the trial court. However, Dr. Dart was deposed June 27, 1989 and the court's final extension was dated June 30, 1989.
[2] In 1987 La.C.C. Art. 2324 was amended to provide:

A. He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.
B. If liability is not solidary pursuant to Paragraph A, or as otherwise provided by law, then liability for damages caused by two or more persons shall be solidary only to the extent necessary for the person suffering injury, death or loss to recover 50 percent of his recoverable damages; however, when the amount of recovery has been reduced in accordance with the preceding Article, a judgment debtor shall not be liable for more than the degree of his fault to a judgment creditor to whom a greater degree of fault has been attributed.... [T]he liability for damages caused by two or more persons shall be a joint, divisible obligation, and a joint tortfeasor shall not be solidarily liable with any other person for damages attributable to the fault of such other person including the person suffering injury, death, or loss, regardless of such other person's insolvency, ability to pay, degree of fault, or immunity by statute or otherwise.
[3] Mr. Perez claims Dr. Burford's deposition should not be considered because it was taken and filed after the deadline. The record indicates the deadline had been extended to June 30, 1989. The deposition was taken June 20, 1989 and filed June 29, 1989. Dr. Burford's report (dated July 21, 1988) was filed May 3, 1989.