| iDALEY, Judge.
|2This ease is on appeal to this Court for the second time. Plaintiff, Allie Martin, sustained serious injuries in a single automobile accident on May 10, 1992, on a portion of State Highway 45 known as “Fleming’s Curve.” The trial court found DOTD 60% at fault and plaintiff 40% at fault. On original appeal [1] we remanded for the trial court to assign a percentage of fault to the phantom driver, and directed the trial court to apportion the remaining fault to-DOTD and Martin in a 60/40 percent ratio. On remand, the trial court assigned 5% fault to the phantom driver, and split the remaining fault 57% to DOTD and 38% to Martin, according to this Court’s instructions. DOTD appeals, arguing that the assignment of only 5% fault to the phantom driver constitutes manifest error, and asks that this court increase the percentage of fault allocated to the phantom driver. After thorough review of the record and jurisprudence, we increase the percentage of fault attributable to the | gphantom vehicle to 30%, and accordingly adjust the fault percentages of DOTD to 42% and Martin to 28%.
The facts and procedural history of this case have been stated in this Court’s original opinion, and will not be restated here. On appeal, DOTD argues that the allocation of 5% fault to the phantom driver is so low as to shock the conscience, is abusively low, and should be increased. DOTD argues that the trial court’s conclusion that the defects in the roadway more likely than not caused the phantom to leave his lane of traffic (thus causing Martin to leave the roadway) is not supported by any evidence.
On remand, it appears that the entire record of the first proceeding was resubmitted. A minute entry shows that a contradictory hearing was held on December 18, 1995, off the record and in chambers. No new testimony or evidence appears in the record. Evidence regarding the phantom driver consists of Martin’s testimony; Martin testified at the first trial that as she began rounding Fleming’s Curve, she perceived on-coming headlights in her lane of travel.
“A ’ I was coming out of the curve — well, just going into the curve, and whenever I made the forty-five degree angle there were headlights that were headed straight at me. And it startled me because they were as close as they were to me. And I saw them swerve to the right this way (indicating), so I swerved to the right this way (indicating) to keep from hitting the ear. And I looked directly to my left to make sure that I was missing the car, and I saw the back seat. I could see that it was a red car. They were approximately maybe three or four inches from my car. But I knew that I had missed the car just by inches. And whenever I turned back around to see where I was headed, that was the time of the impact.”
On cross-examination, Martin testified:
“A. I’m not sure exactly when he did come into my lane. All I know is that when I came out of the curve he was right there in front of me, directly in front of me.
|4Q. Okay. So you were in the right lane proceeding south on Louisiana Highway 45.
A. That’s correct.
Q. Okay. And then this other vehicle came over into your lane while you were in the curve, is that correct?
A The vehicle was already in my lane
Q. ... when you first saw it.
A. ... when I first saw it.
*910 Q. All right. What did you do then?
A. They swerved to the right, so I swerved to the right.
Q. In order to avoid a head on collision?
A. That’s correct.
[[Image here]]
Q. Okay. Now, this phantom vehicle, was it ever discovered by anyone?
A. No, sir, it wasn’t.
Q. So you couldn’t describe the vehicle, could you?
A. No. All I know is it was red.”
Before an appellate court can reverse a trial court’s factual determination, not only must it be determined, that based on the record, a reasonable factual basis for the finding does not exist, but it must also be determined, that based on the record, the finding is clearly wrong or manifestly erroneous. Stobart v. State through DOTD, 617 So.2d 880, 882 (La.1993). The trial court’s apportionment of fault under our comparative negligence scheme is a question of fact which will not be disturbed unless it is clearly wrong. Efferson v. State through DOTD, 463 So.2d 1342 (La.App. 1 Cir.1984), wñt denied 465 So.2d 722 (La.1985). In apportioning fault, the trier of fact should consider the nature of the conduct of each party and the extent of |gthe causal relationship between the conduct and .the damages claimed. Watson v. State Farm Fire and Casualty Ins. Co., 469 So.2d 967 (La.1985).
DOTD cites several cases which gave the “phantom driver” a higher percentage of fault than the 5% given here by the trial court. In Gunn v. Arnica Mut. Ins. Co., 611 So.2d 805 (La.App. 3 Cir.1992), the phantom driver received 25% of the fault. His actions consisted of following too closely behind a vehicle which was stopping to turn. Because the phantom could not stop in time, he accelerated quickly and changed lanes, in the process veering across the center line and into the path of the defendant driver, causing the defendant to swerve and hit another car. The actions of the phantom were witnessed by a third person watching from the roadside.
In Perez v. State, through DOTD, 578 So.2d 1199 (La.App. 4 Cir.1991), a one car accident occurred when the driver swerved to avoid a phantom vehicle which had crossed over the center line into his lane of traffic. The driver’s right front wheel went off the blacktop and on the tapered, loose shell shoulder. He could not get the car back on the road, and the shells gave way, causing the car to slide into a canal. The shoulder was between one and two feet wide. There was about an eight inch drop off from the road to the shoulder, and about a three foot drop from the shoulder to the canal. The passenger in the vehicle corroborated the driver’s testimony.
The driver’s fault was 10%, DOTD’s fault 40%, and the phantom’s 50%. The court found that the drop of the shoulder and its instability constituted defects for which DOTD was hable. In Perez, it is apparent that the phantom’s conduct was a significant factor in the cause of the accident, as compared to the conduct of the driver and DOTD.
In Cornish v. State, DOTD, 93-0194 (La. App. 1 Cir. 12/1/94), 647 So.2d 1170, the plaintiff intentionally drove on to the shoulder of a road to avoid a phantom |6vehicle who he testified was coming toward him and was at least partially in his lane. Cornish’s testimony was vague and uncertain regarding the ear’s relative positions. There were no corroborating witnesses as to the existence of the phantom or his conduct. The trial court found that the conduct of the phantom was not a factor in the accident.
In Devereux v. Allstate Ins. Co., 557 So.2d 1091 (La.App. 2 Cir.1990), the appellate court increased the phantom’s fault from 0 to 30 percent. The phantom car or truck with its bright lights on came up from behind the plaintiffs car at a high speed and began to pass him. Before it had completely overtaken Devereux’s van, the passing vehicle began to cut over into the right lane. Devereux had to edge to the right but did not leave the pavement. At that moment, plaintiff saw a pedestrian standing on the edge of the road to the right. Because the passing vehicle was to his left, Devereux could not swerve to avoid the pedestrian. He slammed on his *911 brakes and almost immediately hit the pedestrian.
The trial court accepted the plaintiffs un-contradicted testimony, finding that the phantom vehicle had violated LSA-R.S. 32:73(1), which requires a passing vehicle to maintain a safe distance before returning to the right lane, and that the phantom’s conduct forced Devereux from his position in the middle of the road that would have afforded a pedestrian on the side of the road a margin of safety. Comparing the parties’ relative conduct under the criteria found in Watson v. State Farm, Fire & Casualty Ins. Co., supra, the court assigned fault as follows: 20% to plaintiff, 30% to the phantom, and 50% to the pedestrian.
In O’Boyle v. Piglia, 95-990 (La.App. 5 Cir. 2/27/96), 670 So.2d 1339, this court considered the fault of a phantom driver who, by pulling into an intersection and stopping, caused the defendant policeman to swerve around the stopped phantom Rand hit plaintiffs vehicle. Plaintiffs car partially blocked an intersection, but she had taken action to clear the way for an ambulance and another police car. The trial court found the phantom’s actions 50 percent causative in the accident.
In Guidroz v. State, Through Dept, of Trans, and Dev., 94-0253 (La.App. 1 Cir. 12/22/94), 648 So.2d 1361, the court found a phantom 0% at fault because, although the plaintiff steered off the road to avoid this vehicle, the testimony showed the phantom did not cross the center line and did not force the plaintiff to swerve to avoid it. Further, the plaintiff reentered the roadway in an unsafe manner. The fault was apportioned to plaintiff and DOTD (25-75).
In Maynor v. Vosburg, 25,922 (La.App. 2 Cir. 11/28/94), 648 So.2d 411, the court apportioned 15 percent fault to a phantom vehicle that came to a “rolling stop” at the end of an acceleration-entrance ramp to the interstate highway. The defendant, who was driving behind the phantom and swerved to avoid him, was found 85 percent at fault for failing to stop behind the phantom car, and for changing lanes without looking, which caused him to hit the plaintiffs 18 wheeler. The court of appeal upheld the trial court’s alloeation of fault.
In Lennard v. State Farm Mutual Auto. Ins. Co., 26,396 (La.App. 2 Cir. 1/25/95) 649 So.2d 1114, the fault of a phantom was reduced from 10 percent to 0. This phantom allegedly waved “clear” to another driver, who took off across the highway in a left turn maneuver without seeing if the way was clear and struck another ear. The second driver admitted he did not know whether the phantom had checked to see if the way was clear, and he did not check the roadway himself before proceeding. The court cited a left turning motorist’s high duty of care, and reallocated the phantom’s fault to the above driver.
IgAfter considering the record and the above jurisprudence, we find that the trial court’s allocation of 5% to the phantom is manifestly erroneous. The trial court accepted Martin’s uneontradicted testimony regarding the phantom’s conduct. This phantom crossed the center line and swerved at the last minute to avoid plaintiffs vehicle. The phantom’s actions caused the plaintiff to also take evasive measures. As the parties’ conduct in causing this accident is compared vis a vis each other, the phantom’s conduct was a significant cause of this accident. The phantom’s fault should be increased to 30 percent.
The record contains a plethora of evidence regarding the many deficiencies of La. 45 at the site of this accident, including the fact that DOTD had known of these deficiencies for years and had not taken corrective measures. This Court’s first opinion discusses these deficiencies, and we embrace those findings. The record is also equally clear that plaintiff Martin was very familiar with this road and traveled it almost daily. The remaining fault will be split between Martin and DOTD 40/60 percent, as per this court’s previous opinion.
Accordingly, we hereby amend the trial court’s judgment to reflect the following allocation of fault: 30 percent to the phantom, 28 percent to Martin, and 42 percent to DOTD.
*912 The parties are to bear their own costs of this appeal.
AMENDED AND AFFIRMED.

. Martin v. La. DOTD, 95-139 (La.App. 5 Cir. 11/15/95), 665 So.2d 457.